**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEAN MAHASE, *on behalf of himself,*<br>*FLSA Collective Plaintiffs, and the Class,* | Case No.: |
| Plaintiff, | |
| v. | **CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT** |
| MAVIS TIRE SUPPLY LLC d/b/a MAVIS<br>DISCOUNT TIRE, | Jury Trial Demanded |
| Defendant. | |

Plaintiff SEAN MAHASE ("Plaintiff") on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint ("Complaint") against MAVIS TIRE SUPPLY LLC d/b/a MAVIS DISCOUNT TIRE ("Defendant" or "Mavis"), and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid overtime wages, due to time-shaving; (2) unpaid overtime wages, due to misclassification of employees as exempt, (3) liquidated damages; and (4) attorneys' fees and costs.

1

2.     Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, due to time-shaving; (2) unpaid spread of hours premiums, (3) unpaid overtime due to misclassification of employees as exempt, (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

3.     Plaintiff also alleges that Defendant failed to pay weekly managerial bonuses, which were guaranteed to himself and others similarly situated, if they worked approximately 56 hours in any given week.  Defendant induced more work by promising additional compensation, which they failed to deliver.  Due to Defendant's failure to properly pay promised bonuses to managers, Plaintiff and others similarly situated are owed compensation for: (1) breach of contract; (2) negligent misrepresentation; (3) promissory fraud; (3) unjust enrichment; (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

4.     Defendant operates more than 430 service centers across twenty-one states, including (i) New Hampshire, (ii) Massachusetts, (iii) Rhode Island, (iv) Connecticut, (v) New York, (vi) New Jersey, (vii) Pennsylvania, (viii) Delaware, (ix) North Carolina, (x) South Carolina, (xi) Georgia, (xii) Florida, (xiii) Alabama, (xiv) Louisiana, (xv) Mississippi, (xvi) Texas, (xvii) Illinois, (xviii) Wisconsin, (xix) Indiana, (xx) Michigan, and (xxi) Ohio. In addition to its core offering of tires, Mavis offers repair and maintenance services including brakes, alignments, suspension, shocks, and exhaust.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367.

6.    Further, this Court has general jurisdiction over the Defendant to this action as Defendant is operated from its headquarters located at 358 Saw Mill Rd., Millwood, NY 10546.

7.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8.    Plaintiff SEAN MAHASE, for all relevant time periods, was a resident of Queens County, New York.

9.    Defendant operates a chain of auto-part service and retail stores, operating primarily under the brand name "Mavis Discount Tire" with hundreds of stores across the twenty-one States ("Store Locations"). *See* **Exhibit A**, Listing Mavis' Store Locations Nationwide.

10.    All the Store Locations are managed by the same executive management team operating from the same headquarters, with the same wage policies and procedures. Further, Defendant operates as a single integrated enterprise and is engaged in related activities. Its stores are allowed  commonly owned by Corporate Defendant, and have a common business purpose:

      i.    Defendant maintains a centralized payroll, human resources, and administrative departments which operate all Store Locations. Defendant's centralized departments are located at Defendant's headquarters and satellite offices located in and around Millwood, NY. *See* **Exhibit B**, Defendant's Career Page ("By supporting over 825 customer-focused retail locations in New York, New Jersey, Connecticut, Massachusetts, Pennsylvania, Delaware, Georgia, Florida, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Texas, Mavis Discount Tire's Operations Support Center team members lay the foundation for achieving a world-class customer experience.

Apply now…[to] our Operations Support Center located in Millwood, New York.")

    ii.    Mavis's centralized management is further clarified by its single career page, which allows interested persons to apply to positions relating to all Store Locations. Despite listing open positions at all Store Locations, Mavis's career page only offers payroll positions, marketing positions, executive management positions, IT positions, and other administrative roles at Defendant's headquarters and satellite offices. *See* **Exhibit C;** *compare with* **Exhibit D**.

    iii.    Plaintiff and other employees were transferred between Store Locations. When employees moved to different Store Locations, they were subject to the same wage and hour policies and procedures established by Mavis.  Plaintiff MAHASE worked as a floating manager for approximately 10 different store locations operated by Mavis.

    iv.    All Mavis Store Locations share a common share common promotional deals, which may be printed and redeemed at any store. *See* **Exhibit E**.

11.    Defendant MAVIS TIRE SUPPLY LLC is a corporation organized under the laws of the State of Delaware with a headquarters located at 358 Saw Mill River Road, Millwood, NY, 10546 and an address for service of process located at C/O Corporation Service Company, 80 STATE STREET, ALBANY, NY 12207.

12.    At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, and the state laws within which they operate.

13.    At all relevant times, Defendant had gross annual revenues in excess of $500,000.

14.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendant.

**MULTISTATE - FLSA COLLECTIVE ACTION ALLEGATIONS**

15.     Plaintiff brings claim for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former assistant managers and floating managers employed by Defendant throughout the United States on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Non-Exempt Collective Plaintiffs").

16.     Plaintiff brings a further claim for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former store managers classified as exempt employees by Defendant throughout the United States on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Exempt Collective Plaintiffs" and together with FLSA Non-Exempt Collective Plaintiffs, "FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time-shaving; (ii) liquidated damages; and (iii) attorneys' fees and costs.

18.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices,

procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to misclassification as an exempt employee; (ii) liquidated damages; and (iii) attorneys' fees and costs.

19.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

20.    Plaintiff brings claim for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of himself and all current and former non-exempt assistant managers and floating mangers employed by Defendant throughout the United States on or after the date that is six (6) years (or the relevant statutory period of the applicable state wage law) before the filing of the Complaint in this case (the "Non-Exempt Class").

21.    Plaintiff brings a further claim for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all current and former store managers classified as exempt employees by Defendant throughout the United States on or after the date that is six (6) years (or the relevant statutory period of the applicable state wage law) before the filing of the Complaint in this case (the "Exempt Class" and together with the Non-Exempt Class, the "Class").

22.    To the extent necessary, Plaintiff will designate subclasses for each of the states where Defendant have employees. Plaintiff designates a subclass of New York Class members (the "New York Subclass"), who are entitled to statutory damages for Defendant's failure to prove proper wage notices and wage statements, as required under NYLL.

23.     All said persons, including Plaintiff, are referred to herein as the "Class."

24.     Both the Non-Exempt Class members and the Exempt Class members are readily ascertainable. The number and identity of the Non-Exempt Class members and the Exempt Class members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Non-Exempt Class members and the Exempt Class members may also be determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under FRCP 23.

25.     The proposed Non-Exempt Class and Exempt Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class. Additionally, there is no doubt that the New York Subclass also contains more than forty (40) members.

26.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Non-Exempt Class, and the relief sought is typical of the relief, which would be sought by each member of the Non-Exempt Class in separate actions. All the Non-Exempt Class members were subject to the same Defendant's corporate practices of failing to pay proper wages, including overtime wages at one-and-one half times their hourly rates for hours in excess of forty (40) each workweek, due to time-shaving.

27.     Plaintiff's claims are also typical of those claims, which could be alleged by any member of the Exempt Class, and the relief sought is typical of the relief, which would be sought by each member of the Exempt Class in separate actions. All the Exempt Class members were

subject to the same Defendant's corporate practices of failing to pay proper wages, including overtime wages at one-and-one half times their hourly rates for hours in excess of forty (40) each workweek, due to a misclassification as exempt workers.

28.    All the Exempt Class members were subject to the same Defendant's corporate practices of promising but failing to provide managerial bonuses for each week the manager worked over approximately 56 hours.

29.    Defendant's company-wide policies and practices affected all members of the Non-Exempt Class similarly and all members of the Exempt Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member.

30.    Defendant's corporate-wide policies and practices affected all members of the Non-Exempt Class similarly and all members of the Exempt Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member. Plaintiff and the members of both proposed Classes sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

31.    Plaintiff is able to fairly and adequately protect the interests of the Non-Exempt Class and Exempt Class and have no interests antagonistic to either Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

32.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Corporate Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.    Defendant and other employers throughout the state violate relevant state's wage and hour statutes. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.    There are questions of law and fact common to the Non-Exempt Class and Exempt Class which predominate over any questions affecting only individual class members, including:

      a)  Whether Defendant employed Plaintiff and Non-Exempt Class members within the meaning of state labor laws;

b) Whether Defendant employed Plaintiff and Exempt Class members within the meaning of state labor laws;

c) What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Non-Exempt Class members properly;

d) What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Exempt Class members properly;

e) At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Non-Exempt Class members for their work;

f) At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Exempt Class members for their work;

g) Whether Defendant properly notified Plaintiff and Non-Exempt Class members of their pay rates;

h) Whether Defendant properly notified Plaintiff and Non-Exempt Class members of their pay rates;

i) Whether Defendant paid Plaintiff and Non-Exempt Class members for all hours, including overtime, worked given Defendant's policy of time shaving;

j) Whether Defendant paid Plaintiff and Exempt Class members were misclassified as Exempt and not paid overtime hours;

k) Whether Defendant paid Plaintiff and Exempt Class members were promised and paid bonuses for weeks in which they worked more than a certain number of hours;

l) Whether Defendant provided proper wage statements to New York Subclass members; and

m) Whether Defendant provided proper wage and hour notices to New York Subclass members.

## STATEMENT OF FACTS

**Plaintiff SEAN MAHASE Wage and Hour Claims:**

35.     In or about January 2020, Plaintiff SEAN MAHASE began working for Defendant as an assistant manager.  In January 2022, Plaintiff began working as a floating manager.  In August 2022, Plaintiff was promoted and began working as a store manager.  Throughout his

employment, Plaintiff primarily worked for Mavis' 69 E Sunrise Hwy, Freeport, NY 11520 store location. However, throughout his employment, Plaintiff worked at approximately 10 other locations on an as needed basis. Plaintiff's employment with Defendant terminated on or around January 31, 2023.

36.    Until January 2022, while working as an assistant manager, Plaintiff was designated as a non-exempt worker and earned a base wage of $16.00 an hour. From January 2022 to August 2022, Plaintiff worked as a floating manager, was designated as a non-exempt worker, and earned a base wage of $17.00 an hour.

37.    While working as both an assistant and floating manager, Plaintiff was scheduled to work from 8:00 am to closing at 6:00 pm, five days a week, for a total scheduled time of fifty (50) hours per week. Throughout Plaintiff's time as an assistant and floating manager, he always worked these hours plus additional hours off the clock.

38.    After August 2022, Plaintiff was promoted to work as a store manager and classified by Defendant as exempt.

39.    While working as a store manager, Plaintiff earned a fixed salary of $1,125 per week, without any overtime pay.

40.    When Plaintiff worked as a store manager, he did not have the power to do the following: (i) hire or fire employees – this power was solely retained by Regional Managers and Mavis' human resources department, (ii) set employees' schedules – schedules were set by Regional Managers, and (iii) request employees come in to cover an absent employee, such as when someone called out sick. Moreover, Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members spent 90% of their days engaging in non-exempt mechanic and technician work.

41.    Throughout the time when Plaintiff worked as a store manager, he worked 7 days a week for approximately 70 hours per week.

**Claims for Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members**:

42.    Defendant instituted nationwide policies, which demanded off-the-clock uncompensated work from Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members.

43.    Defendant demanded that Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members working as assistant and floating managers engage in the following after-hours off-the-clock work: (1) respond to store managers and regional managers after-hours texts and calls to discuss the next day's assignments, (2) attend Zoom meetings set up by store managers and regional  managers to discuss employee performance and financial issues, (3) respond to texts and calls after hours to discuss outstanding/incoming shipments and shortages of parts, and (4) drop off the Mavis' store's daily deposits to the bank on the way home.  All the prior after-hours work was mandated, but not compensated, by Defendant. Plaintiff personally observed this occurring to other assistant managers and floating managers engaging in similar after-hours work, including personally observing their attendance at Zoom meetings after-hours, for which no one could clock-in.

44.    Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members, were all similarly not compensated for this after-scheduled-hours work time.  Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members were similarly undercompensated for at least 2 hours per week for this after-hours work.

45.    For example, for the week after Black Friday in 2022, Plaintiff Mahase was forced to engage in approximately 4 hours of off-the-clock work.  In addition to dropping off deposits,

which took a minimum of 20 minutes per day, Plaintiff had to attend for 2 hours, with other assistant managers and floating mangers, an off-the-clock Zoom meeting regarding the expenses associated with the independent contractor and delivery person Tony [LNU]. Moreover, Plaintiff had to field an additional hour worth of after-hours phone calls and texts. In total for this week alone, Plaintiff worked an additional 4 overtime hours in after-hours work, for which Plaintiff was never compensated.

46.    In addition to this after-hours work, Defendant demanded that Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members working as assistant and floating managers engage in pre-shift off-the-clock work. At all of Mavis' locations, employees clock in through an application on their desktop computers rather than through a stand-alone time-keeping system. This meant they could not clock-in until their computers were up and running. Further, it is Defendant's policy for desktop computers to be shut down overnight and then be rebooted in the morning. The requirement to boot-up the computer meant that neither Plaintiff, FLSA Non-Exempt Collective Plaintiffs, nor Non-Exempt Class members could clock in immediately upon arrival, as the computers needed to be restarted, which took no less than five minutes, and frequently longer if the computer froze or was slow. Additionally, Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members had to begin working immediately upon arrival because there were always customers trying to resolve car issues prior to going to work, even co-workers and managers would often have tasks needing immediate assistance upon entering the door, for approximately 10 minutes. Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members of Defendant were required to attend to these needs immediately, before their computers were ready to be used for clocking in.

47.    Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members, were all similarly not compensated for this pre-shift work time.  Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members were similarly undercompensated for 15 minutes per shift.  For Plaintiff, who worked 5 shifts per week, he was undercompensated by 75 minutes per week for this pre-shift work time.

48.    Additionally, Defendant shaved the compensable hours of employees by forcing Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members to work through lunch, but demand Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members clock-out for 30 minute lunch breaks, or create a manual clock-out for a 30 minute lunch break.  At all times, Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members were not permitted to leave the building during lunch and never received a real, free and clear lunch break.

49.    Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members, were all similarly not compensated for these lunch breaks which they worked through. For Plaintiff who did not clock-out, he would be under compensated on days where Defendant forced him to clock-out or manually clocked him out, which occurred approximately once a week. Plaintiff was undercompensated due to this violation by 30 minutes per week.

50.    As a result of Defendant's wrongful policies, Plaintiff, FLSA Non-Exempt Collective Plaintiffs, and Non-Exempt Class members were not properly compensated for all their hours of work, including overtime hours.  Non-Exempt FLSA Collective Plaintiffs and Non-Exempt Class members were similarly not properly compensated for their wages earned, including overtime wages for all hours worked over forty (40).

**Claims for Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members**:

51.    Defendant instituted nationwide policies, which created unpaid overtime compensation for Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members, who were all misclassified as exempt employees.

52.    Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members, were all store managers working for Defendant, classified as exempt employees, and paid on a salary basis without overtime.  Despite being classified as exempt employees, Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members did not have the power to do the following: (i) hire or fire employees – this power was solely retained by Regional Managers and Mavis' human resources department, (ii) set employees' schedules – schedules were set by Regional Managers, and (iii) request employees come in to cover an absent employee, such as when someone called out sick.  Moreover, Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members spent 90% of their days engaging in non-exempt mechanic and technician work.

53.    Additionally, Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members were promised and given a payment schedule stating that they would be paid an additional $150 dollar "Good Manager Bonus" for any week in which the store manager worked over 56 hours.  Despite working over 56 hours for each week of his employment as a manager, Plaintiff only received this bonus once.  Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members were all denied this promised "Good Manager Bonus."

54.    As a result of Defendant's wrongful policies, Plaintiff, FLSA Exempt Collective Plaintiffs, and Exempt Class members were not properly compensated for all their hours of work, including overtime hours.  Exempt FLSA Collective Plaintiffs and Exempt Class members were

similarly not properly compensated for their wages earned, including overtime wages for all hours worked over forty (40).

**WTPA Claims for New York Subclass Members**:

55.     Defendant failed to provide Plaintiff and New York Subclass members proper wage notices and wage statements, as well as overtime premiums.

56.     In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting employees' interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

57.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendant's conduct actually harmed Plaintiff and New York Subclass members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendant, allowed Defendant to hide its wrong-doing, and necessitated the current litigation to vindicate Plaintiff and New York Subclass members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendant's failure to provide a wage notice and wage statements

to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

58.    The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and New York Subclass members. This delayed payment caused Plaintiff and New York Subclass members to struggle to timely pay bills and other debts, due to Defendant's continued attempts to hide wrongdoing from employees.

59.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, Non-Exempt FLSA Collective Plaintiffs, Exempt FLSA Collective Plaintiffs, Non-Exempt Class members, and Exempt Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

60.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

61.    At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

62.    At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

63.    At all relevant times, Defendant had gross annual revenues in excess of $500,000.

64.    At all relevant times, Defendant had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs for all their hours worked, including overtime hours for hours worked over forty (40).

65.    Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid. Further records concerning these matters should be in the possession and custody of Defendant. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

66.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime wages when Defendant knew or should have known such was due.

67.    Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

68.    As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

69.    Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, and an equal amount as liquidated damages.

70.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

71.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

72.     At all relevant times, Plaintiff, New York Exempt Subclass members, and New York Non-Exempt Subclass members were employed by Defendant within the meaning of the NYLL, §§2 and 651.

73.     Defendant knowingly and willfully failed to pay Plaintiff, New York Exempt Subclass members, and New York Non-Exempt Subclass members the full amount wages owed, including overtime wages for hours worked over forty (40), in violation of the NYLL.

74.     Defendant failed to provide a proper wage and hour notice, at the date of hiring and annually thereafter, to New York Subclass members per requirements of the NYLL.

75.     Defendant failed to provide proper wage statements with correct payment as required by NYLL § 195(3).

76.     Due to the Defendant's NYLL violations, Plaintiff  New York Exempt Subclass members, and New York Non-Exempt Subclass members are entitled to recover from Defendant their unpaid overtime wages, reasonable attorneys' fees, interest, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## MULTISTATE CLASS ACTION ALLEGATIONS UNDER RULE 23

**(brought by Plaintiff under the wage laws of their respective states and the wage laws of states where Defendant does business, as listed below)**

77.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

78.     At all relevant times, Exempt Class Members and Non-Exempt Class members were, just like Plaintiff, employed by Defendant within the meaning of their respective states applicable state wage and hour laws.

79.     Plaintiff brings this class action under the wage and hour laws of the following states in which Defendant does business:

1) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

2) Delaware: Wage Payment and Collections Act, 19 Del. C. § 1101 et seq.

3) Florida: Florida's Minimum Wage Act's, Fla. Stat. 448.08 *et seq.*;

4) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

5) Indiana: Minimum Wage Law, Burns Ind. Code Ann. § 22-2-2-1 et seq.

6) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

7) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

8) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

9) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

10) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

11) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

12) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

13) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

14) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*, Ohio Const. art. II, § 34a;

15) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

16) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

17) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*; and

18) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*.

80.     Plaintiff can represent the Non-Exempt Class and Exempt Class because, irrespective of the state in which each Non-Exempt Class member and Exempt Class member worked for Defendant, the underlying violation is the same: failure to pay all wages due, including overtime wages, as detailed above. The claims of Plaintiff and either the Non-Exempt Class and Exempt Class are the same.

81.     The Court has general personal jurisdiction over all Class members because Defendant is headquartered in New York.

82.     Plaintiff has standing to represent absent Non-Exempt Class members and Exempt Class members under the laws of states where Plaintiff did not work:

> The only point of contention is whether Langan has standing to bring a class action on behalf of unnamed, yet-to-be-identified class members from other states under those states' consumer protection laws. Because there has been considerable disagreement over this question in the district courts, we write to make explicit what we previously assumed in *In re Foodservice Inc. Pricing Litigation*, 729 F.3d 108 (2d Cir. 2013): as long as the named plaintiffs have standing to sue the named Defendant, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), *id.* At 126-27, not a question of "adjudicatory competence" under Article III…

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92-93 (2d Cir. 2018)

83.     Defendant knowingly and willfully violated Plaintiff's, Non-Exempt Class members' and Exempt Class members' rights by failing to pay them all wages owed, including overtime wages for hours worked over forty.

84.     Due to Defendant's state law violations, Plaintiff, Non-Exempt Class members and Exempt Class members are entitled to recover from Defendant their unpaid regular and overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

85.     Not all of the statutes listed above have explicit overtime provisions. However, those statutes that lack these still require employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass Class members' claims just as much as would explicit overtime requirements.  These relevant state law provisions are:

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C)

86.     The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a).  As to the absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

87.    The Third Circuit Court of Appeals has clearly demonstrated the untenability of

any such requirement:

> We raise the following questions to further demonstrate the error of the proposed
> framework adopted by our dissenting colleagues. If the dissent's "colorable legal
> claim" test is a threshold inquiry for commonality, why should the court not
> consider every potential disqualifier from one's having a "colorable legal claim?"
> For example, in any class certification case, should the court consider whether all
> potential class members complied with applicable pre-notice requirements under
> the relevant substantive law? Should the court consider whether every potential
> class member exhausted her administrative remedies under the relevant substantive
> law? Should the court evaluate whether each class member's claim complies with
> the applicable statute of limitations? The answers to these questions most certainly
> implicate whether a litigant, in a class action or otherwise, has a "colorable legal
> claim." These questions, moreover, show how flawed, from an administrative,
> logical, and practical standpoint, the dissent's and objectors' approach really is. No
> class would ever be certified because it would be impossible to demonstrate that
> every class member has a "colorable legal claim." (Dissenting Op. at 10.) More
> than this, it would gut commonality, for, most certainly, individual issues would
> then predominate. There would simply be no class that could meet this
> commonality and predominance test.

*Sullivan v. DB Invs., Inc*., 667 F.3d 273, 310 (3rd Cir. 2011).

88.    To the extent the laws of any of the relevant states prohibit class actions as a

means of pursuing common wage claims, those restrictions are irrelevant in federal court, where

the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate*

*Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions

across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health*

*Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal.

2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules

Enabling Act. Rule 23 governs Plaintiff's claims, and Plaintiff's claims are not subject to dismissal

based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*,

792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting

class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

89.     Due to Defendant's state law violations, Plaintiff, Non-Exempt Class members and Exempt Class members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT IV

## CLASS ALLEGATIONS - BREACH OF CONTRACT

90.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

91.     Plaintiff, on behalf of himself and Exempt Class members alleges that at all times material hereto, Plaintiff and Exempt Class members performed fully their contractual obligations.

92.     Defendants unfairly interfered with Plaintiff and Exempt Class members' rights under their contract by publicizing and guaranteeing bonuses for work, which Defendants never delivered despite the work being performed.

93.     As a direct and proximate result of Defendants' failure to act fairly and in good faith, Plaintiff and Exempt Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT V

## CLASS ALLEGATIONS - PROMISSORY FRAUD

94.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

95.     In order to induce Plaintiff and Exempt Class members to work extra hours, Defendant affirmatively promised Plaintiff and Exempt Class members bonuses if certain work metrics were met.

96.     Defendant's representations as set forth above were false and fraudulent, the Defendant knew that the representations were false and fraudulent at the time they were made, and Defendant did not intend to honor these representations.

97.     Plaintiff and Exempt Class members were not aware of the falsity of Defendant's representations, and reasonably and actually relied on them in accepting employment with the Defendant.

98.     As a direct and proximate result of Defendant's false and fraudulent misrepresentations, Plaintiff and Exempt Class members have sustained damages in an amount according to proof at trial.

99.     Plaintiff and Exempt Class members are informed and believe, and on that basis allege, that Defendant's false and fraudulent misrepresentations were done with fraud and malice and in conscious disregard of Plaintiff's and the Exempt Class members' rights.

100.    Plaintiff and Exempt Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VI

## **CLASS ALLEGATIONS – NEGLIGENT MISREPRESENTATION**

101.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

102.    In order to induce Plaintiff and Exempt Class members to work extra hours, Defendant affirmatively promised Plaintiff and Exempt Class members: that Plaintiff and Exempt Class members would be paid bonuses at a certain rate.

103.    Defendant's representations as set forth above were false at the time the agreements were made, and Defendant made these misrepresentations without reasonable ground for believing them to be true when made.

104.    Plaintiff and Exempt Class members were not aware of the falsity of Defendant's representations, and reasonably and actually relied on them in accepting employment with the Defendant.

105.    As a direct and proximate result of Defendant's false misrepresentations, Plaintiff and Exempt Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**COUNT VII**

**CLASS ALLEGATIONS - UNJUST ENRICHMENT**

106.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

107.    By virtue of Defendant's conduct as alleged herein, and Plaintiff and Exempt Class members' performance, Defendant was unjustly enriched by the Plaintiff's and Exempt Class members' conduct and did not compensate Plaintiff and Exempt Class members fully.

108.    The circumstances are such that it would be inequitable to allow Defendant to retain the excess benefit from Plaintiff and Exempt Class members conduct without paying fair value for it.

109.    As a direct and proximate result of Defendant's wrongful withholding of funds collected that should have been paid to Plaintiff and Exempt Class members, Plaintiff and Exempt Class members have sustained damages in an amount according to proof at trial.

110.    Defendant's withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Exempt Class members' rights, with the intent to cause injury to Plaintiff' and Exempt Class members. Plaintiff and Exempt Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Non-Exempt Collective Plaintiffs, FLSA Exempt Collective Plaintiffs, Non-Exempt Class members, and Exempt Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, state wage, and the common law;

b.    An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages due under the FLSA and the state wage laws, including overtime wages, due to time-shaving;

d.    An award of unpaid wages, including overtime wages, due under the FLSA and the state wage laws, including overtime wages due to misclassification.

e.  An award for damages as a result of Defendant's breach of contract, promissory fraud, negligent misrepresentation;

f.  An award for disgorgement as a result of Defendant's unjust enrichment;

g.  An award of statutory penalties as a result of Defendant's failure to comply with New York Labor Law wage notice and wage statement requirements;

h.  An award of liquidated and/or punitive damages as a result of Defendant's willful failure to proper wages pursuant to 29 U.S.C. § 216;

i.  An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay proper wages for all hours of work, pursuant to State wage laws;

j.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.  Designation of Plaintiff as Representative of the FLSA Exempt Collective Plaintiffs and FLSA Non-Exempt Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23; and

m. Designation of Plaintiff as Representative of the Exempt Class, Non-Exempt Class, and any Subclasses;

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 11, 2023                                        Respectfully submitted,

By:    */s/ C.K. Lee*
              C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiff, and the Class*